UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

VIRGINIA B. DUBROC

CIVIL ACTION

VERSUS

NO 15-161-SDD-EWD

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

# NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 13, 2016.

_____
**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

VIRGINIA B. DUBROC

VERSUS

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

CIVIL ACTION

NO 15-161-SDD-EWD

**REPORT AND RECOMMENDATION**

Plaintiff Virginia B. Dubroc ("Plaintiff" or "Mrs. Dubroc") brought this action under 42 U.S.C. §405(g) for judicial review of the final decision of Carolyn W. Colvin, acting Commissioner of Social Security (the "Commissioner") denying her application for Title II disability insurance.

Based on the applicable standard of review under §405(g) and the analysis which follows, it is the recommendation of this Court that the Commissioner's decision be affirmed.

**I.     Background**[1]

All parties agree that Plaintiff's date last insured was June 30, 2012.[2] Plaintiff filed a prior application for disability insurance benefits (the "Prior Application") alleging disability beginning May 1, 2009.[3] On April 25, 2012, an ALJ found Plaintiff was not disabled and therefore denied

---

[1] References to documents filed in this case are designated by "R. Doc. at [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."

[2] R. Doc. 10, p. 5 ("The claimant obviously recognizes and concedes that in order to receive benefits for a Title II application, it must be shown that she was disabled prior to the date of last insured. Consequently, it is not disputed that the claimant has the burden of proof and that she must prove that her medical condition justifies disability prior to June 30, 2012."); R. Doc. 13, p. 2 ("[T]he relevant period for Plaintiff's Title II claim is April 26, 2012, Plaintiff's alleged disability onset date, through June 30, 2012, the date Plaintiff's insured stated for disability benefits expired.").

[3] *See*, AR, p. 93.

2

Plaintiff's Prior Application.[4]  No appeal from that decision was taken.[5]  On March 1, 2013, Plaintiff filed a second Title II application seeking disability insurance benefits, alleging disability beginning April 26, 2012 (the "Current Application").[6]

A hearing was held on February 25, 2014 regarding Plaintiff's Current Application.[7]  At the hearing, Plaintiff was represented by counsel.  During the hearing, Plaintiff explained that she had previously worked as a secretary for a little over 20 years.[8]  She explained that she had been suffering from pain and severe headaches, as well as severe tremors in her hands and interstitial cystitis.[9]  Regarding the tremors in her hands, Mrs. Dubroc explained that the tremors started "seven or eight years ago" and her "handwriting is almost illegible now."[10]  Mrs. Dubroc also testified to severe pain stemming from fibromyalgia, short term memory problems, and sleep problems.[11]  At the conclusion of the hearing, the ALJ explained that due to the very short period

---

[4] AR, pp. 125-129.  In the April 25, 2012 decision denying benefits under Plaintiff's Prior Application, the ALJ determined that Plaintiff's "cervical spine problems" were a "severe" impairment. AR, p. 131.  The ALJ further found that Plaintiff had the residual functional capacity to perform the full range of sedentary work. AR, p. 131.

[5] The parties agree that Plaintiff has the burden of establishing that her disability existed within the two-month window between her alleged onset date of April 26, 2012 and June 30, 2012, the date Plaintiff was last insured.  *See*, R. Doc. 10, p. 10 & R. Doc. 13, p. 2.  In other words, Plaintiff recognizes that she is not permitted to re-litigate her Prior Application.

[6] AR, p. 194.  Plaintiff did not file an application for Supplemental Security Income ("SSI").  AR, p. 194.  In her opening brief, Plaintiff asserts that she filed an initial application for benefits on December 17, 2008. R. Doc. 10, p. 4.  The record does not include this alleged application or any related information.  Later in Plaintiff's brief, Plaintiff explains that she was denied benefits in a previous ruling on April 25, 2012 and refers to the April 25, 2012 denial as being related to her "initial application." R. Doc. 10, p. 5. The April 25, 2012 decision relates to Plaintiff's January 21, 2012 application for disability insurance benefits alleging disability beginning May 1, 2009. AR, p. 128.

[7] AR, pp. 106-124.

[8] AR, p. 110.

[9] AR, pp. 110-111.  With regard to interstitial cystitis, Mrs. Dubroc explained that she suffered from "spasming of the bladder, severe pain.  It feels like you have a bladder infection.  Urinate very often."  AR, p. 112.

[10] AR, p. 112.

[11] AR, p. 113.

3

of time at issue, she would have to review the evidence to see if Mrs. Dubroc was "having problems with her hands and the gripping and fine manipulation" during the relevant time period.[12]

On May 13, 2014, the ALJ denied Plaintiff's Current Application for disability insurance benefits.[13] In the ALJ's May 13, 2014 decision, the ALJ explained that "[a]dministrative finality and the doctrine of *Res judicata* applies to the prior period…Discussion of evidence prior to the period at issue is limited to placing the claimant's current symptoms and limitations into context or used solely to determine credibility issues."[14] Accordingly, the ALJ explained that "evidence prior to claimant's alleged onset of disability was not considered when formulating the claimant's residual functional capacity…."[15] The ALJ further found that through the date last insured (June 30, 2012), Plaintiff "had the following severe impairments: status post anterior cervical disc fusion at C4 through C7 in 2007, and fibromyalgia."[16] However, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).[17]

Regarding Plaintiff's RFC, the ALJ explained that Plaintiff "is able to prepare meals, do housework, frequently leave the house alone, go grocery shopping, pay bills, count change, handle a savings account, and use a checkbook."[18] The ALJ additionally noted that there was "little

---

[12] AR, p. 123. The ALJ explained that "if the evidence shows that she can't – she was having problems with her hands and the gripping and fine manipulation, I can go ahead and grant the case, but without that I can't, because it's a very small period of time. Afterwards, I mean, now she's obviously having major problems and it would be no problem, but she's only insured through June of 2012." AR, p. 123.

[13] AR, pp. 90-101.

[14] AR, p. 93.

[15] AR, p. 93.

[16] AR, p. 96. The ALJ found that Plaintiff's complaints of abdominal pain, chronic cystitis, over active bladder, history of West Nile Virus infection, shoulder pain, tendinopathy, and manipulative difficulties were nonsevere. *See*, AR, p. 96.

[17] AR, p. 97.

[18] AR, p. 98.

indication the alleged onset date is related to any worsening of the claimant's impairment."[19] While the ALJ recognized that Plaintiff had undergone cervical fusion at C4-C5, C5-C6, and C6-C7 in August, 2007, she noted that follow up appointments "showed good healing."[20] The ALJ further noted that after the date last insured, Plaintiff displayed a normal gait in January, 2013.[21] Although the ALJ recognized that the record contained additional evidence following the date last insured wherein Plaintiff "complained of slow but study [sic] increase in her symptoms related to her neck," the ALJ explained that Plaintiff had the burden of proving onset of disability prior to expiration of her insured status.[22] Noting there were "no medical opinions in the record," the ALJ adopted the prior administrative determination of Plaintiff's RFC "as there is no evidence of worsening of the claimant's impairments during the relevant period" and as "consistent with the claimant's history of spinal surgery."[23]

In light of Plaintiff's RFC, the ALJ determined that Plaintiff was capable of performing past relevant work as a secretary[24] and therefore was not disabled "at any time from April 26, 2012, the alleged onset date, through June 30, 2012, the date last insured."[25] On May 28, 2014, Plaintiff appealed the ALJ's May 13, 2014 decision.[26] On January 22, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's May 13, 2014 decision.[27] Accordingly, Plaintiff exhausted her administrative remedies with regard to her Current Application before filing this

---

[19] AR, p. 98.
[20] AR, p. 99.
[21] AR, p. 99.
[22] AR, p. 99.
[23] AR, p. 99.
[24] AR, p. 100.
[25] AR, p. 101.
[26] AR, p. 88.
[27] AR, p. 1.

action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.

## II. Standard of Review

Under 42 U.S.C. §405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617

(5th Cir. 1990). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### III.  Plaintiff's Allegations of Error

Plaintiff recognizes that she "has the burden of proving that disability occurred during a period when she was insured" and that "[i]n the instant case, a short window of only months existed between the alleged onset date and the date of last insured; claimant had to prove that her disability existed within those months."[28] Plaintiff alleges that: (1) the ALJ erred in her interpretation and application of *res judicata*;[29] and (2) that the ALJ did not follow applicable guidelines relating to the determination of Plaintiff's onset of disability date.[30]

### IV.  Law and Analysis

#### A. Application of *Res Judicata*

Plaintiff asserts that while *res judicata* applies to previous social security disability determinations, "[i]t does not…extend to evidence submitted in the previously adjudicated disability application. Specifically, it does not exclude evidence previously considered."[31] Plaintiff argues that a disability determination requires "analysis of the treatment (and therefore the medical evidence) that leads up to and precedes the claimant's onset date" and specifically complains that the ALJ failed to consider medical evidence related to Plaintiff's 2007 cervical

---

[28] R. Doc. 10, p. 10.

[29] R. Doc. 10, pp. 5-7.

[30] R. Doc. 10, pp. 7-10.

[31] R. Doc. 10, p. 6.

7

fusion, complaints of shoulder pain in 2008, and MRIs in 2007 and 2008 indicating damage to both right and left shoulders.[32]

In response, Defendant argues that "[a]gency policy guidelines provide res judicata applies when the same material facts are involved, and the guidelines define 'same material facts' as meaning that Plaintiff has submitted no 'new and material evidence.'"[33] Defendant points out that here, Plaintiff only submitted medical evidence from her first claim and medical evidence dated after expiration of her insured status.[34] Defendant further argues that the Commissioner properly referred to medical evidence at issue in Plaintiff's Prior Application as background information and, in any event, the medical evidence following expiration of Plaintiff's insured status "undermines Plaintiff's contention that she was disabled during the relevant period."[35]

In the Fifth Circuit, an unappealed, final administrative decision denying benefits for a specific time period is subject to *res judicata*. *See*, *Muse v. Sullivan*, 925 F.2d 785, n. 1 (5th Cir. 1991) ("Muse's current application for disability benefits also alleges that certain of his ailments began in June of 1980. However, a previous administrative decision adjudicated Muse's benefit entitlements through April 27, 1983. The appeals council denied review, and Muse did not seek further appellate review. Thus Muse's claim for benefits for the period before April 27, 1983, is subject to the doctrine of administrative res judicata.") (citing 20 C.F.R. § 404.957(c)(1) (1990)).

---

[32] R. Doc. 10, p. 6. Plaintiff points to the ALJ's determination regarding shoulder pain, tendinopathy, and manipulative difficulties as an improper application of *res judicata*. R. Doc. 10, p. 7. The ALJ reasoned that "all evidence regarding these impairments are either from prior to the alleged onset date or after the expiration of the claimant's insured status. There is no evidence of acceptable clinical or laboratory diagnostic techniques showing any anatomical or physiological abnormality from the relevant period. Accordingly, these impairments are not medically determinable, and are nonsevere." AR, p. 96.

[33] R. Doc. 13, p. 5.

[34] R. Doc. 13, pp. 5-6.

[35] R. Doc. 13, p. 7. *See also*, R. Doc. 13, p. 8 ("In sum, the ALJ properly considered the evidence from the first claim as a background to the additional evidence related to the second claim and found that the additional evidence did not show Plaintiff was disabled during the relevant period….Going further, the ALJ reviewed the evidence from after the relevant period and determined it did not establish Plaintiff was disabled during the relevant period.").

*See also*, *Gaines v. Sullivan*, 1993 WL 114503, at *6 (E.D. La. April 6, 1993) ("An unappealed, final administrative decision is subject to the doctrine of *res judicata*; thus, plaintiff is not entitled to benefits for the time period covered by the prior decision."); HALLEX I-2-4-40, 2005 WL 1870458 ("For administrative res judicata to apply to any particular issue, the same material facts must be involved, i.e., the prior claim represented the same material facts pertinent to the particular issue. The term 'same material facts' means, in effect, that no new and material evidence has been submitted since the last adjudication on the prior claim.").

In *Williams v. Shalala*, 41 F.3d 664 (5th Cir. 1994), the Fifth Circuit considered the preclusive effect of a claimant's prior, unappealed denial of supplemental security income ("SSI") benefits. There, claimant had filed a previous application for SSI benefits based on disability in 1988. That application was denied and claimant did not seek judicial review. Instead, he filed a new application for SSI benefits in 1990. After denial of the second application, claimant argued *inter alia* that defendant improperly gave *res judicata* effect to the first denial. The court disagreed, explaining that "[f]ailing to commence a civil action within the time allotted by the Social Security Act for appeal forecloses judicial review of the Secretary's decision denying benefits, absent a colorable constitutional claim. When the Secretary's decision on the same facts and issues becomes final through either administrative of [sic] judicial action, the doctrine of res judicata applies." *Id*. at *5. The court further explained that "[a] medical condition is presumed not to have changed from the time of the Secretary's earlier final determination unless the claimant proves the contrary." *Id*. (citing *Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)).

Here, the ALJ found there was "little indication the alleged onset date is related to any worsening of the claimant's impairment"[36] and explained that Plaintiff's medical records failed

---

[36] AR, p. 98.

"to provide strong support for the claimant's allegations of disabling symptoms and limitations resulting from her physical impairments."[37] In making that determination, the ALJ noted Plaintiff's August 2007 cervical fusion and that follow up appointments showed "good healing."[38] The ALJ also noted that "[r]ecords from early 2012 show visits to the doctor for cold symptoms; she displayed no abnormalities related to her physical impairments." Defendant correctly points out that this January 23, 2012 treatment note is the only evidence from 2012 prior to Plaintiff's alleged April 26, 2012 disability onset date. The Court's review of the administrative record confirms no treatment notes were provided during the relevant period of April 26, 2012 through June 30, 2012. However, the record does contain and the ALJ did review treatment notes following expiration of Plaintiff's insured status.[39] In addition to other records, the ALJ pointed out that Plaintiff underwent a physical examination in March 2013 for fibromyalgia.[40] Notes from that exam indicated that Plaintiff "does have a little bit of an intermittent tremor that has just developed now on this left hand. Both wrists, elbows and shoulders move well. Knees and hips move well….She does have fibromyalgia tender points that are active, upper and lower body, right and left side. Her strength today is 5/5 upper and lower extremities."[41] Notes from another appointment in March 2013 reflect that Plaintiff reported that she enjoyed gardening/landscaping and reading as hobbies and that her primary form of exercise was walking.[42] Following review of the medical evidence, the ALJ adopted the prior administrative determination that Plaintiff retained the functional capacity to perform the full range of sedentary work, "as there is no evidence of

---

[37] AR, p. 99.

[38] AR, p. 99.

[39] *See*, AR, p. 99.

[40] AR, p. 99.

[41] AR, p. 376.

[42] AR, p. 361.

10

worsening of the claimant's impairments during the relevant period" and as "consistent with the claimant's history of spinal surgery."[43] The Court finds that the ALJ correctly applied the doctrine of *res judicata* and that substantial evidence supports the ALJ's determination. *See*, *Williams v. Shalala*, 41 F.3d 664, *5 (5th Cir. 1994) ("The record reveals no significant deterioration of Williams' physical condition since the filing of his earlier application. Because Williams did not seek judicial review of his prior application, the Secretary did not err in giving res judicata effect to her earlier decision. Further, substantial evidence supports the Secretary's finding that Williams did not overcome his burden to prove that his condition had changed.").

### B. Determination of Plaintiff's Onset Date

Plaintiff additionally argues that the ALJ did not follow Social Security Regulation 83-20 ("Regulation 83-20") as it relates to the determination of Plaintiff's onset date.[44] Regulation 83-20 "prescribes the policy and procedure for determining the onset dater of disability." *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993). Regulation 83-20 provides in part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began (see example under heading, "Precise Evidence Not Available – Need for Inferences").

---

[43] AR, p. 99.

[44] R. Doc. 10, p. 7.

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

With regard to situations in which precise evidence is not available and an inference of onset date is required, the regulation goes on to provide *inter alia*:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., that date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Based on the above provisions, Plaintiff argues that in the context of a slowly progressing impairment, Regulation 83-20 required the ALJ to: (1) consider medical records showing treatment that occurred after the date last insured; and (2) utilize the services of a medical advisor to properly determine onset date.[45]

### 1. Consideration of Medical Records Post-Date Last Insured.

Plaintiff contends that the ALJ failed to consider medical records evidencing treatment that occurred *after* Plaintiff's date last insured.[46] Plaintiff asserts that a consideration of medical records post-June 30, 2012 was required by Regulation 83-20 in order for the ALJ to determine

---

[45] R. Doc. 10, p. 8.

[46] R. Doc. 10, p. 8.

12

the correct onset date of Plaintiff's disability.[47] Plaintiff specifically points to five post-June 30, 2012 notes that she contends should have been considered when determining her disability onset date:[48] (1) an August 23, 2012 treatment note reflecting a visit at Louisiana Urology reporting "overactive bladder symptoms which have been present several years;"[49] (2) a March 4, 2013 progress note from Ochsner Health Center wherein Plaintiff's chief complaint was "generalized pain and intermittent weakness" and a physical examination showed Plaintiff had "a little bit of an intermittent tremor that has just developed now on this left hand" and "fibromyalgia tender points that are active….;"[50] (3) a February 4, 2013 provider note from Ochsner reflecting Plaintiff was positive for fatigue, had symptoms of irritable bowel, had interstitial cystitis with frequency and pain, and "also experiences some numbness and tingling of her hands and feet in the last year" as well as "pain in her hands, hips, lower back, right knee and ankles;"[51] (4) notes from a March 15, 2013 neurology consult wherein Plaintiff reported a worsening familial tremor as well as swelling and stiffness around the ankles and hands and that she "now has a rest tremor in the left hand as well;"[52] and (5) a November 12, 2013 progress note from Ochsner showing Plaintiff was receiving treatment for osteoarthritis and fibromyalgia.[53]

---

[47] R. Doc. 10, pp. 7-10. Plaintiff specifically directs the Court to the portion of this regulation dealing with the determination of onset date when evaluating a slowly progressing impairment. R. Doc. 10, p. 7. As Plaintiff explains, "a determination as to whether [Plaintiff's] condition was disabling should not be based solely on the treatment received during that short window of time. Rather, it is suggested, that with non-traumatic injuries, often referred to as longitudinal injuries, the exact onset date becomes non-exact. Consequently, the longitudinal evidence should be examined to determine the most likely and most logical onset date." R. Doc. 14, p. 2.

[48] R. Doc. 10, pp. 8-9.

[49] AR pp. 317-319.

[50] AR pp. 376-377.

[51] AR pp. 380-382.

[52] AR pp. 403-409.

[53] AR pp. 430-431.

As discussed above, the ALJ's ruling makes clear that she did review medical evidence post Plaintiff's date last insured. Based on that review, the ALJ found there was "no evidence of worsening of the claimant's impairments during the relevant period."[54] Accordingly, it appears that the ALJ *did* (despite Plaintiff's assertions to the contrary) review medical records following Plaintiff's date last insured but did not find that this evidence established that Plaintiff was disabled during the relevant time period. Based on its own review of medical records in the administrative record, the Court finds that substantial evidence exists in the record to support the ALJ's determination that Plaintiff's condition had not worsened during the relevant period.[55] As such, the Court also finds that substantial evidence exists to support the ALJ's finding that through the date last insured, Plaintiff was capable of performing past relevant work and was therefore not disabled. *See*, *Williams v. Shalala*, 41 F.3d 664 (5th Cir. 1994) ("[a] medical condition is presumed not to have changed from the time of the Secretary's earlier final determination unless the claimant proves the contrary.") (citing *Buckley v. Heckler*, 739 F.2d 1047, 1048-49 (5th Cir. 1984)). *See also*, *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) ("the medical evidence is the primary element in the determination of onset of disability."); *Luckey v. Astrue*, 458 Fed.Appx. 322, 327 (5th Cir. 2011) (noting that "[s]ubsequent medical evidence is relevant "because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status" and

---

[54] AR, p. 99. The ALJ also noted that "[a] letter from the claimant's representative setting out the medical evidence indicates claimant received no treatment in 2012, the year the claimant alleged disability" and found "[t]his is inconsistent with onset of disability during this time, and detracts from the credibility of those allegations." AR, p. 98.

[55] The Court notes that it is questionable whether the ALJ was required to consider evidence post-date last insured under Fifth Circuit precedent. *See*, *Brown v. Astrue*, 344 Fed. Appx. 16 at 20 (5th Cir. 2009) (rejecting Plaintiff's argument that the ALJ failed to give necessary weight to physician who reviewed claimant's records from the period of alleged disability covered in previous, unappealed denial and treated claimant following expiration of claimant's insured status and explaining that "[t]he relevant period dates from October 1, 2001 [the alleged onset date] to September 30, 2002 [the date last insured]. This is the only relevant period the law required the ALJ to consider, given the expiration of Brown's insured status, and the fact that Brown filed an earlier DIB application that was denied and never appealed."). However, and as discussed herein, the ALJ did review medical records reflecting treatment after Plaintiff's date last insured.

affirming a finding of no disability within the dates insured based on claimant's failure to present any evidence other than his own testimony and an uncorroborated retrospective medical opinion.).

### 2.   Utilization of a Medical Advisor

Plaintiff also contends that if Regulation 83-20 had been properly followed and considered, "the ALJ instead would have probably utilized the services of a medical advisor in order to reach a proper determination."[56] The Court finds Plaintiff's argument in this regard unpersuasive. First, a reading of Regulation 83-20 indicates that an ALJ should call on the services of a medical advisor when disability onset date must be inferred due to the inability to obtain medical evidence establishing the onset date of a slowly progressing disease. *See*, *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) (holding that "in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83–20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."); *Luckey v. Astrue*, 458 Fed.Appx. 322, 326 (5th Cir. 2011) (where ALJ found substantial evidence that claimant's disability onset occurred after the date last insured, the disability onset date was not ambiguous and the ALJ was not required to consult a medical advisor). Here, the ALJ *did* have available and was able to review medical records reflecting treatment directly before and after the period in which Plaintiff was insured. Second, because the ALJ found no disability, a determination of the onset date of disability would be illogical and contrary to that finding. *See*, *Nix v. Barnhart*, 160 Fed. Appx. 393, 396-97 (5th Cir. 2005) ("Under SSR 83-20, the disability onset date is 'the first day an individual is disabled as defined in the Act and the regulations.' In this case, the ALJ determined that Nix was not disabled. Because the ALJ did not find that Nix

---

[56] R. Doc. 10, p. 8.

was disabled, no inquiry into an onset date was required."). Accordingly, the Court finds that the ALJ applied the proper legal standards with regard to Regulation 83-20.

## V.     Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports a finding that the ALJ applied proper legal standards and substantial evidence supports her determination that the Plaintiff was not disabled during the relevant time period.

## RECOMMENDATION

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. §405(g), the final decision of the Acting Commissioner of Social Security Carolyn W. Colvin, denying the application for disability insurance benefits filed by Plaintiff Virginia B. Dubroc, be affirmed and this action be dismissed.

Signed in Baton Rouge, Louisiana, on June 13, 2016 .

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**